## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **MEADOWCRAFT, INC.**, | ) | Case No. 09-10988 (BLS) |
| | ) | |
| Debtor. | ) | |

### MOTION FOR AN ORDER (I) AUTHORIZING, BUT NOT DIRECTING THE DEBTOR TO PAY CERTAIN PRE-PETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS AND TO CONTINUE PAYMENT OF WAGES, COMPENSATION, AND EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS; AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTION TO PROCESS AND PAY ALL CHECKS PRESENTED FOR PAYMENT AND TO HONOR ALL FUNDS TRANSFER REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING

Meadowcraft, Inc., the debtor and debtor in possession in the above-captioned case ("Meadowcraft" or the "Debtor"), by this motion (the "Motion") requests that this Court enter an order, pursuant to §§ 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), (i) authorizing, but not directing, the Debtor, in accordance with its stated policies, to:  (a) pay pre-petition employee wages, salaries, and other accrued compensation; (b) make contributions to pre-petition benefit programs and continue such programs in the ordinary course of business; (c) honor workers' compensation obligations; (d) make payments for which pre-petition payroll withholding deductions (including but not limited to, payroll taxes) were made; (e) pay processing costs and administrative expenses relating to the foregoing payments and contributions; and (f) make all payments to third parties incident to the foregoing payments and contributions; and (ii) authorizing and directing applicable banks and other financial institutions to receive, process, honor, and pay checks and transfers on account of Employee Obligations (as defined below).

The Debtor seeks this authorization because its employees are essential to the Debtor's efforts to maximize the value of its estate for the benefit of all creditors.  Absent an order

granting the relief requested by this Motion, the employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable the Employees (as defined below) to meet their own personal financial obligations. Moreover, the Debtor believes that without the requested relief the stability of the Debtor's business operations may be undermined irreparably, as the Debtor's employees remain crucial to the success of the Debtor and the ultimate success of these proceedings.

In support of this Motion, the Debtor relies on the Declaration of Tim LeRoy in Support of the Debtor's First-Day Motions (the "LeRoy Declaration"), which was concurrently filed with the Court. In further support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory and legal predicates for the relief requested herein are §§ 105(a), 363(b), 507(a)(4), and 507(a)(5) of the Bankruptcy Code and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

2.      On March 20, 2009 (the "Petition Date"), an involuntary petition for relief pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code") was filed against the Debtor.

3.      Subsequently, the Debtor consented to its case being converted to a reorganization proceeding under Chapter 11 of the Bankruptcy Code.

4.      The Debtor continues to operate its business as debtor in possession pursuant to § 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a

trustee or examiner, and no official committee has yet been appointed by the Office of the United States Trustee.

5.     Reference is made to the Leroy Declaration for a description of the Debtor's business and the circumstances leading to the chapter 11 filing.

## THE EMPLOYEES

6.     The Debtor has a current workforce of approximately 1,300 employees, of which approximately 1,100 are hourly and 200 are salaried.  At the Debtor's Wadley location, it employs approximately 750 hourly bargaining unit employees pursuant to a collective bargaining agreement with the Retail Wholesale Department Store Union ("RWDSU").  At the Debtor's Selma location, it employs approximately 350 hourly bargaining unit employees pursuant to a collective bargaining agreement with the RWDSU.  In addition to the 1,300 employees, the Debtor works with approximately 32 independent contractors to sell and represent the Debtor's product to customers throughout the country (collectively with the 1300 employees, the "Employees").

7.     The Employees possess the institutional knowledge, experience, and skills necessary to support the Debtor's business operations during the chapter 11 process.  Because of the Debtor's need for the continued commitment of the Employees, the Debtor is requesting the relief herein to minimize any hardships to the Employees resulting from the commencement of the Debtor's chapter 11 case.  The Debtor must take all necessary steps to retain its Employees and bolster their morale to preserve and maximize the value of the Debtor's estate.

8.     Accordingly, by this Motion, the Debtor seeks authority to pay and honor its pre-petition obligations, pay Unpaid Compensation (as defined below), pay employee withholding taxes and employer taxes (including but not limited to federal, state, employment, and other

payroll and withholding taxes), honor vacation obligations, continue its workers' compensation programs, maintain employee benefits, continue garnishment and payroll deductions, and honor miscellaneous Employee benefits that the Debtor has traditionally provided in the ordinary course of business (all such obligations to the Employees collectively, the "Employee Obligations").

## THE EMPLOYEE OBLIGATIONS

### A.     Wage and Unpaid Obligations

9.     In the ordinary course of business, the Debtor, through its payroll processor, ADP, Inc. ("ADP"), issues payroll checks to both hourly and salaried Employees.  With respect to the Selma and Wadley employees, to fund the amounts necessary to meet payroll, ADP debits the Debtor's controlled disbursement account with Wachovia Bank and/or First Bank of Wadley (the "CDA Account") one business day prior to the applicable payroll date.  Once ADP receives the payroll funds, it transmits the direct deposits *via* ACH transfers and issues checks on the Debtor's CDA Account.  Direct deposits to salaried employees are funded from the Debtor's main operating account with Wachovia Bank (the "Master Operating Account").  Funds are transferred from the Master Operating Account to fund the Debtor's CDA Account for payroll checks.

10.     The Debtor issues payroll on the 15th and 30th of the month to its 200 salaried employees, and on a weekly basis to the remaining 1,100 employees.  Independent contractors are paid their commissions on a monthly basis at the end of the month.

11.     The Selma and Wadley bargaining unit employees are paid by check issued by ADP.  It is highly likely that many Employees may not have received or cashed those checks (the "Uncollected Paychecks") prior to the commencement of the Debtor's chapter 11 case.

Accordingly, the Debtor seeks authority to honor those Uncollected Paychecks that remain outstanding as of the Petition Date, or if necessary, to issue replacement checks to Employees to the extent such Uncollected Paychecks are not honored as a result of the Debtor's chapter 11 case.

12.    In total, the Debtor estimates that approximately $1,373,000 in pre-petition wages, adjustments to pre-petition wages, salaries, and other compensation owed to Employees may remain unpaid as of the Petition Date (collectively, the "Unpaid Compensation"). The Debtor does not believe that any Employee (with the exception of Sam Blount (Chairman) and Timothy LeRoy (Executive Vice President)) is owed in excess of the $10,950 limit on priority claims under § 507(a)(4) of the Bankruptcy Code on account of Unpaid Compensation.

13.    Pursuant to this Motion, the Debtor seeks to pay in the ordinary course of business the outstanding amounts owed to its current Employees as of the Petition Date for accrued and unpaid wages, salaries, and other compensation, and to continue to pay its Employees after the Petition Date in ordinary course.[1]

14.    As mentioned above, the Debtor employs 1,100 bargaining unit employees who are members of RWDSU ("RWDSU Employees"). As part of the compensation paid to the RWDSU Employees, the Debtor makes payments to the RWDSU for union dues for the RWDSU Employees. On average, the Debtor makes contributions of approximately $5,000 per month for the union dues for RWDSU Employees working in the Selma and Wadley facilities.

---

[1] ADP's services are crucial to the smooth functioning of the Debtor's payroll system and therefore to the Debtor's operations generally. The Debtor pays ADP on account of its services in the amount of $2,200 per week for payroll The Debtor pays ADP an additional $385 every other week on account of semi-monthly payroll. By this Motion, the Debtor requests authority to pay any and all pre-petition amounts and to continue to pay ADP in the ordinary course of business as routinely done prior to the Petition Date. Currently, the Debtor owes ADP $31,500 on account of pre-petition obligations and seeks permission as part of this Motion to pay the pre-petition amount owed to ADP.

15. As of the Petition Date, the Debtor owes approximately $22,500.00 on account of unpaid prepetition union dues on behalf of the RWDSU Employees. Accordingly, the Debtor seeks authority to pay the unpaid union dues on behalf of the RWDSU Employees.

**Vacation and Holiday Time**

16. Full-time salaried and Wadley bargaining unit employees are eligible to accrue vacation from their first day of employment, but are not eligible to take vacation until completing the specified period for earned vacation.[2] All Employees are entitled to earn vacation based upon the Employee's years of service. In the first year of service, vacation is prorated based on the employee's effective starting date. Vacation time cannot be carried over into the next year and no payment shall be made in lieu of vacation.

17. The Debtor's ordinary course policy is to pay an eligible Employee, upon termination, all earned unpaid vacation at his/her final rate of pay. As of the Petition Date, Employees of the Wadley bargaining unit as well as certain salaried employees had earned unpaid vacation valued at approximately $770,000, and accrued unpaid vacation in the amount of approximately $575,000 (collectively, the "Vacation Obligations"). Pursuant to this Motion, the Debtor is not seeking authority to pay any Vacation Obligations.

18. In addition to vacation, full-time salaried Employees are paid for ten (10) holidays per year and Wadley and Selma bargaining unit employees are paid eight (8) holidays per year (the "Holiday Obligations" and together with Vacation Obligations, the "Leave Obligations").

19. The Debtor requests that, to the extent applicable, it be authorized as part of its ongoing business operations to allow Employees to use Leave Obligations accrued in respect of pre-petition periods, as well as continue to accrue Vacation Obligations in respect of post-petition periods..

---

[2] There is no vacation allowance with respect to the Selma bargaining unit employees.

**B.**     **Workers' Compensation Program**

20.     Under the laws of the Alabama, the Debtor is required to maintain workers' compensation liability insurance and to provide employees with workers' compensation coverage for claims arising from or related to their employment with the Debtor.  The Debtor provides workers' compensation benefits to its Employees through a large deductible program with Great American Insurance (the "Workers' Compensation Policy") with Strategic Comp. acting as the third-party administrator.  Pursuant to the program, the Debtor pays Great American (through a financing arrangement) a fee of $250,000 on annual basis (paid in monthly installments of approximately $19,404.05 per month over ten months) that covers their cost of administration, stop/loss coverage and related charges.  In addition to this charge, the Debtor reimburses Great American for claims incurred by Employees under the Workers' Compensation Policy.  The Debtor also pays Strategic Comp. a monthly fee (the fee is 9% of the claims) based upon the amount of claims each month.

21.     Through February 2009, with certain limited exceptions, the Debtor was current on its workers' compensation obligations.  Presently, Great American Insurance (or its financing agent) is owed $36,964.45.  The Debtor also owes Strategic Comp. $1,406.

22.     Failure to maintain workers' compensation insurance in the state in which the Debtor conducts business could result in the institution of administrative or legal proceedings and material fines against the Debtor and its officers and directors.  The Debtor therefore seeks authority to continue paying and/or contesting in good faith, as appropriate in the Debtor's business judgment, all outstanding amounts related to the Workers' Compensation Policy that arose prior to the Petition Date, including, without limitation, any payments for workers' compensation claims, premiums, and fees owed for administrative costs and other amounts

required in connection with the Debtor's workers' compensation program, as such amounts become due in the ordinary course of the Debtor's business.

## C.  **Employee Benefits**

23.     The Debtor has established various plans and policies to provide its Employees with various medical, dental, prescription drug, life and supplemental insurance, retirement savings, and other benefits (collectively, the "Employee Benefits," and amounts owed under these plans, the "Employee Benefit Obligations").

24.     By this Motion, the Debtor seeks the authority, but not the direction, to satisfy all outstanding amounts related to Employee Benefit Obligations that arose prior to the Petition Date, including, without limitation, any payments for premiums and fees owed for administrative costs and other amounts required in connection with the Debtor's Employee Benefit Obligations, as such amounts become due in the ordinary course of the Debtor's business.  The Employee Benefits include, but are not limited to, the following:

### (i)     **Medical Benefits**

25.     The Debtor offers medical and prescription insurance coverage to its Employees. The Debtor provides coverage to eligible salaried Employees under a large deductible self-insured plan administered by Blue Cross & Blue Shield of Alabama.  Under this self-insured plan, the Debtor is obligated to pay approximately $105,300.00 per month as a deposit against contingent claims of its Employees.  As an additional component of the self-insured plan, the Debtor pays approximately $4,650.00 in premium for stop-loss catastrophic insurance.

26.     The Debtor offers medical coverage to its Selma and Wadley bargaining unit employees through the RWDSU Health and Welfare Fund (collectively, the "Medical Plans").

27.     Employees participating in the Medical Plans contribute 10-60% of the costs associated with participation in the plan.  The Debtor pays the remainder of the costs associated with offering the Medical Plans.

28.     Additionally, in compliance with applicable law, the Debtor offers an additional eighteen (18) months of coverage to former Employees pursuant to Public Law 99-272 Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA").  The Debtor currently does not pay for COBRA benefits, although newly enacted laws may result in the Debtor paying for COBRA benefits.

29.     Prior to the Petition Date, the Medical Plans cost the Debtor approximately $250,000 per month.  As of the Petition Date, the Debtor owes $178,254.18 in actual and accrued but unpaid medical claims costs for the previous quarter ending January 2009 for its salaried employees, an additional $210,600.00 in unpaid self-insured deposits for February and March 2009, and $9,274.19 for stop-loss premium for February and March 2009.

30.     In addition, with respect to the Selma and Wadley bargaining unit employees, the Debtor seeks authority to pay the RWDSU $361,319.41 for medical/health insurance for the months of January, February and March 2009.   The Debtor further requests authority to continue the Medical Plans and COBRA benefits in the ordinary course and the authority to make the all above referenced payments.

**(ii)     Dental Insurance**

31.     The Debtor offers dental insurance to salaried Employees (the "Dental Plan"). The dental plan is administered by Blue Cross & Blue Shield of Alabama and participating Employees are responsible for 10-20% of the associated costs, which are deducted from the Employees' paychecks.

32.     The Debtor requests authority to continue the Dental Plan in the ordinary course of business.

**(iii)     Life Insurance**

33.     The Debtor provides life insurance coverage and long-term disability insurance to salaried Employees through Symetra Financial (the "Symetra Financial Plan").  Prior to the Petition Date, the Symetra Financial Plan cost the Debtor approximately $8,800 per month. With respect to the Selma & Wadley bargaining unit employees, such employees receive this benefit through the RWDSU plan.

34.     The Debtor also offers term life insurance and certain other benefits from various insurance companies to hourly Employees pursuant to group policies with Reliance Standard (collectively with the Symetra Financial Plan, the "Life Insurance Plan").  Participating Employees contribute 100% of the associated costs through payroll deductions.

35.     The Debtor requests authority to pay Symestra Financial Plan $15,404.88 in premium for the months of February and March 2009.  The Debtor also requests authority to turn over $1,544.24 to HSR in employee funds in the Debtor's possession and control for voluntary AD&D coverage for the Debtor's salaried employees.  The Debtor also seeks authority to continue the Life Insurance Plan in the ordinary course of business.

**(iv)     Retirement Benefits**

36.     The Debtor maintains a retirement savings plan (the "Savings Plan"), administered by Great West, that meets the requirements of Section 401(k) of the Internal Revenue Code of 1986.  Salaried Employees can elect to make before-tax contributions to the Savings Plan through payroll deductions that are then paid to a trust shortly thereafter.  The Debtor collects contributions from eligible, participating Employees each payroll cycle and

transfers those contributions into the Savings Plan as directed by the Employees. Some of these amounts collected from Employees may not have been transferred into the Savings Plan prior to the Petition Date. The Savings Plan provides for the Debtor to match 33% of the first 10% of the Employee's contribution (the "401k Match"). The Debtor estimates that the 401k Match will cost approximately $17,000 a month. As part of this Motion, the Debtor seeks to pay $28,049 in connection with prepetition amounts related to its 401K Plan.

37. The Debtor provides a retirement plan for Wadley and Selma bargaining unit employees through the RWDSU pension plan. Contributions are made to the plan on a per week basis according to the collective bargaining agreements. The Debtor estimates that the pension plan costs approximately $22,000 a month.

38. The Debtor seeks authority, but not direction, to continue the Savings Plan, and to pay over such amounts payable to the Savings Plan and 401K match and pension plans, as and when due.

**(iv)** **Cafeteria Plans**

39. The Debtor also offers employees certain "cafeteria" benefit plans, pursuant to section 125 of the Internal Revenue Code, whereby the employees can contribute pre-tax dollars in order to purchase certain additional benefits or to purchase supplemental life insurance.

40. The Debtor offers its employees the opportunity to participate in such a "cafeteria" style plan for vision care through Comp Benefits. As of the Petition Date the Debtor is holding $4,968.61 in employee contributions earmarked for payment to the Comp Benefits Vision Plan. Through this Motion, the Debtor seeks authority to pay those employee funds to Comp Benefits.

41. Additionally employees of the Debtor have the opportunity to purchase supplemental life insurance under a "cafeteria" style plan with Reliance Standard. As of the Petition Date, the Debtor is holding $10,152.10 in employee contributions earmarked for payment to Reliance Standard for the employees' supplemental life insurance premium. The Debtor also seeks authority to pay those employee funds to Reliance Standard.

**(v)     Employee Payroll Garnishments/Other Payroll Deductions**

42. The Debtor deducts from its Employees' paychecks certain taxes, such as payroll and social security taxes, required to be withheld by certain federal, state and local taxing authorities (the "Payroll Tax Obligations"). The Debtor forwards certain of these withheld amounts, as well as the necessary employer contributions, to ADP, which forwards the amounts to the appropriate governmental authorities, or alternatively makes direct payments to certain governmental authorities. By this Motion, the Debtor seeks authority to continue to forward any Payroll Tax Obligations not forwarded as of the Petition Date.

43. Occasionally, the Debtor is presented with garnishment or child support orders requiring the withholding of Employee wages to satisfy each Employee obligations.

44. Additionally, certain Employees have voluntary deductions for items such as optional health coverage for dependents, optional supplemental insurance, optional dental or vision care, or optional pre-paid legal services. Payments of these obligations are made from amounts otherwise payable to the Employees and are not an incremental cost obligation of the Debtor's estate.

45. The Debtor seeks authority to continue making such deductions and to pay over such amounts to third parties as requested or required.

## RELIEF REQUESTED AND REASONS THEREFORE

46.     To minimize the personal hardship the Employees will suffer in connection with the filing of these cases, the Debtor requests entry of an order (i) authorizing (but not directing) the Debtor to pay, in its sole discretion, the Employee Obligations as described in this Motion and all costs incident thereto; (ii) authorizing (but not directing) the Debtor to continue to honor its practices, programs and policies with respect to the Employees, as such practices, programs and policies were in effect as of the Petition Date, with authorization (but not direction) to pay the Employee Obligations that become due and owing during the pendency of these cases; and (iii) authorizing and directing Disbursement Banks (as defined below) to receive, process, honor and pay all checks on account of Employee Obligations whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

47.     Pursuant to § 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $10,950 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)     wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)     sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor. . . .

11 U.S.C. § 507(a)(4).

48.     Likewise, under § 507(a)(5) of the Bankruptcy Code, Employees may ultimately be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan –
>
> (A)     arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)     for each such plan, to the extent of –
>
> > (i)     the number of employees covered by each such plan multiplied by $10,950; less
>
> > (ii)    the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

49.     The Debtor believes that the Employee Obligations that it seeks to pay are entitled to priority status under §§ 507(a)(4) and (a)(5) of the Bankruptcy Code and individually do not exceed $10,950.  The Debtor would therefore be required to pay these claims in full in order to confirm a chapter 11 plan.  11 U.S.C. § 1l29(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan).  Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of the Employee Obligations to the extent that they constitute priority claims.

50.     Additionally, the failure to pay Payroll Tax Obligations could result in tax liabilities and penalties for both the Employees and the Debtor, and potentially to the Debtor's directors and officers.  Likewise, the failure to transmit garnishments and other similar deductions can cause hardship to certain Employees and an administrative burden for the Debtor.

Indeed, if the Debtor were to be prohibited from transmitting such deductions, the Debtor would expect inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments that are not the Debtor's property, but, rather, have been withheld from Employees' paychecks on such parties' behalf. Further, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's failure to submit such payments.

51.     Moreover, maintaining the Workers' Compensation Policy is indisputably justified because applicable state law mandates this coverage. In addition, with respect to the workers' compensation claims, the risk that eligible claimants will not receive timely payments with respect to employment-related injuries could have a devastating effect on the financial well-being and morale of the Employees and their willingness to remain in the Debtor's employ.

52.     Other than as described in this Motion, the Debtor does not by this Motion seek to alter its compensation, incentive, vacation, and other benefit policies at this time. This Motion is intended only to permit the Debtor, in its discretion, to make payments consistent with those pre-petition policies to the extent that, without the benefit of an order approving this Motion, such payments would be inconsistent with the Bankruptcy Code.

53.     The Debtor submits that, consistent with Bankruptcy Rule 6003(b), immediate entry of an order approving payment of the Employee Obligations is necessary to avoid immediate and irreparable harm to the Debtor and its estate, in addition to the Employees for the reasons set forth herein.

54.     Courts in this District have approved the payment of pre-petition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate the chapter 11 process. See, e.g., In re Delfasco, Inc., Case

No. 08-11578 (Bankr. D. Del. July 29, 2008) (Walrath, J.) [D.I. 17] (authorizing the payment of pre-petition wages, salaries and other compensation); <u>In re Buffets Holdings, Inc.</u>, Case No. 08-10141 (Bankr. D. Del. Jan. 23, 2008) (Walrath, J.) [D.I. 36] (same); <u>In re Am. Home Mortgage Holdings, Inc.</u>, Case No. 07-11047 (Bankr. D. Del. August 7, 2007) (Sontchi, J.) [D.I. 69] (same); <u>In re Amp'd Mobile, Inc.</u>, Case No. 07-10739 (Bankr. D. Del. June 7, 2007) (Shannon, J.) [D.I. 38] (same); <u>In re Earthshell Corp.</u>, Case No. 07-10086 (Bankr. D. Del. January 24, 2007) (Gross, J.) [D.I. 15] (same); <u>In re Sea Containers Ltd.</u>, Case No. 06-11156 (Bankr. D. Del. October 17, 2006) (Carey, C.J.) [D.I. 16] (same); <u>In re Foamex International Inc.</u>, Case No. 05-12685 (Bankr. D. Del. September 20, 2005) (Walsh, J.) [D.I. 40, 41] (same).

55.     Authorization to pay any amounts under this Motion shall not be deemed to constitute post-petition assumption or adoption of any contract, program or policy pursuant to § 365 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all its rights under the Bankruptcy Code with respect thereto.  Moreover, authorization to pay all amounts under this Motion shall not affect the Debtor's right to contest the amount or validity of any Employee Obligations, including without limitation the Payroll Tax Obligations that may be due to any taxing authority.

56.     Accordingly, as authorized by §§ 105(a) and 363(b) of the Bankruptcy Code, the Debtor seeks authority to pay the Employee Obligations that become due and owing during the pendency of this case and to continue at this time its practices**,** programs and policies with respect to the Employees, as such practices, programs and policies were in effect as of the Petition Date. The Debtor submits that the relief requested herein is essential and critical to its ability to maximize value for its creditors.

**APPLICABLE BANKS SHOULD BE AUTHORIZED**
**TO HONOR AND PAY CHECKS ISSUED AND MAKE OTHER**
**TRANSFERS TO PAY THE PRE-PETITION EMPLOYEE OBLIGATIONS**

57.     The Debtor further requests that the Court authorize and direct applicable banks and other financial institutions (collectively, the "Disbursement Banks") to honor and pay all pre-petition and post-petition checks issued or to be issued, and fund transfers requested or to be requested, by the Debtor on account of the Employee Obligations that were not honored or paid as of the Petition Date.  The Debtor also seeks authority to issue new post-petition checks, or effect new fund transfers, on account of the Employee Obligations to replace any pre-petition checks or fund transfer requests that may be dishonored or rejected.

58.     As a result of the commencement of the Debtor's chapter 11 case, and in the absence of an order of the Court providing otherwise, the Debtor's checks or other transfers on account of the Employee Obligations may be dishonored or rejected by the Disbursement Banks.

59.     The Debtor represents that each of these checks or transfers can be identified as relating directly to payment of the Employee Obligations.  Accordingly, the Debtor believes that pre-petition checks and transfers other than those for Employee Obligations will not be honored inadvertently.

60.     The Debtor hereby requests that all Disbursement Banks be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related to the Employee Obligations, whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date. The Debtor represents that it has sufficient cash or funding to promptly pay all of the Employee Obligations, to the extent described herein, on an ongoing basis and in the ordinary course of its business.

61.     Pursuant to the Bankruptcy Rule 6003, the Court may grant relief within twenty days after the filing of the petition regarding a motion to pay all or part of a prepetition claim only if such relief is necessary to avoid immediate and irreparable harm. The relief sought in this Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate.

## **NOTICE**

62.     Notice of this Motion has been given to (a) the Office of the United States Trustee for the District of Delaware; (b) those creditors listed on the Debtor's List of Creditors Holding 20 Largest Unsecured Claims; and (c) counsel to the Debtor's pre and post-petition senior secured lenders. As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Del. L. R. 9013-1(m). Due to the urgency of the circumstances surrounding this Motion and the nature of the relief herein, the Debtor respectfully submits that no further notice of this Motion is required.

WHEREFORE, the Debtor requests entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as is just and proper.

Dated: March 27, 2009                            **DRINKER BIDDLE & REATH LLP**

/s/ Howard A. Cohen
Howard A. Cohen (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

- and -

Robert K. Malone (RM 1098)
500 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 360-1100
Facsimile: (973) 360-9831

*Proposed Counsel for Debtor and Debtor in Possession*

## <u>EXHIBIT A</u>

Proposed Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MEADOWCRAFT, INC., | ) | Case No. 09-10988 (BLS) |
| | ) | |
| Debtor. | ) | |

### ORDER (I) AUTHORIZING, BUT NOT DIRECTING, THE DEBTOR TO PAY CERTAIN PRE-PETITION WAGES, COMPENSATION, AND EMPLOYEE BENEFITS AND TO CONTINUE PAYMENT OF WAGES, COMPENSATION, AND EMPLOYEE BENEFITS IN THE ORDINARY COURSE OF BUSINESS; AND (II) AUTHORIZING AND DIRECTING APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO PROCESS, AND PAY ALL CHECKS PRESENTED FOR PAYMENT AND TO HONOR ALL FUNDS TRANSFER REQUESTS MADE BY THE DEBTOR RELATING TO THE FOREGOING

Upon consideration of the motion (the "Motion")[1] of Meadowcraft, Inc., the debtor and debtor in possession in the above-captioned case ("Meadowcraft" or the "Debtor"), for entry of an order (i) authorizing, but not directing, the Debtor, in accordance with its stated policies, to: (a) pay pre-petition employee wages, salaries, incentives and other accrued compensation; (b) make contributions to pre-petition benefit programs and continue such programs in the ordinary course of business; (c) honor workers' compensation obligations; (d) make payments for which pre-petition payroll withholding deductions (including, but not limited to, payroll taxes) were made; (e) pay processing costs and administrative expenses relating to the foregoing payments and contributions; and (f) make all payments to third parties incident to the foregoing payments and contributions; and (ii) authorizing and directing applicable banks and other financial institutions to receive, process, honor, and pay checks and transfers on account of Employee Obligations, all as described more fully in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1334; and due notice of the Motion having been provided; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and all the parties in interest; and after due deliberation and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED that:**

1. The Motion is GRANTED subject to the limitations contained in 11 U.S.C. §§ 507(a)(4) and (a)(5).

2. The Debtor is authorized, pursuant to §§ 105(a) and 363(b) of the Bankruptcy Code, but not obligated or directed, in the reasonable exercise of its business judgment, to pay and honor amounts on account of the Employer Obligations that become due and owing on account of Unpaid Compensation, and on account of allowed unsecured claims for contributions to an employee benefit plan.

3. All applicable Disbursement Banks are authorized and directed, when requested by the Debtor and in the Debtor's sole discretion, to receive, process, honor, and pay any and all checks or drafts drawn on the Debtor's accounts to the Employees whether those checks were issued or presented prior to or after the Petition Date, and to make other transfers, provided that sufficient funds to make the payments are available in the applicable accounts, whether deposited prepetition or postpetition.

4. Authorization to pay all amounts on account of the Employee Obligations shall not affect the Debtor's right to contest the amount or validity of any Employee Obligations, including, without limitation, the Payroll Tax Obligations that may be due to any taxing authority.

5.      Nothing contained in this Order or the Motion shall constitute a rejection or assumption by the Debtor of any executory contract or unexpired lease by virtue of reference to any such contract or lease in the Motion.

6.      This Court shall retain jurisdiction over the Debtor and any and all parties who receive payment pursuant to this Order with respect to any matters, claims, rights or disputes arising from or related to the Motion, the implementation of this Order or the validity of any Employee Obligations and Payroll Tax Obligations.

7.      This Court shall retain jurisdiction with respect to any matters, claims, rights or disputes arising from or related to the implementation of this Order.

Dated: _____, 2009
      Wilmington, Delaware

_____
THE HONORABLE BRENDAN L. SHANNON
UNITED STATES BANKRUPTCY JUDGE

CH01/ 25321463.1

3