IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MEADOWCRAFT, INC., | Case No. 09-10988 (BLS) |
| Debtor. | |

## NOTICE OF FILING AMENDED STATEMENT OF FINANCIAL AFFAIRS AND AMENDED SCHEDULES OF ASSETS & LIABILITIES

PLEASE TAKE NOTICE that on March 20, 2009, (the "**Petition Date**") an involuntary petition (the "**Involuntary Petition**") pursuant to 11 U.S.C. § 303, was filed against Meadowcraft by petitioning creditors Wells Fargo Bank, NA, RZB Finance LLC and Burdale Financial Limited (the "**Petitioning Creditors**") seeking entry of an order for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

PLEASE TAKE NOTICE that subsequently, the Debtor consented to entry of an Order for Relief for reorganization under Chapter 11 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, on June 1, 2009, the Debtor filed its Statement of Financial Affairs (the "**SOFA**") and its Schedules of Assets and Liabilities (the "**Schedules**").

PLEASE TAKE FURTHER NOTICE that, on June 12, 2009, the Debtor filed an Amended SOFA and Amended Schedules in order to correct a typographical error that relates to a specific individual. In the Sofa, the Debtor amended Sofa 20b by removing Larry York and amended Sofa 23 so as to include the proper value of withdrawals for Larry Maynor and to state the correct the usage of company vehicles. In addition, Schedule B-21 was amended to include the property party, Larry Maynor.

PLEASE TAKE FURTHER NOTICE that the SOFA and Schedules are available on the Court's website at http://www.nysb.uscourts.gov. A login and password to the Court's Public Access to Electronic Court Records ("**PACER**") are required to access this information and can be obtained through the PACER Service Center at http://www.pacer.psc.uscourts.gov or you may view the SOFA and Schedules online at http://chapter11.epiqsystems.com/meadowcraft. Copies of the SOFA and Schedules may be obtained by written request (at your cost) to Epiq at the following address and telephone number: Epiq Bankruptcy Solutions, LLC, 757 Third Avenue, Third Floor, New York, NY 10017 (646) 282-2500.

PLEASE TAKE FURTHER NOTICE that the Debtors reserve their rights to file any subsequent amendments to the SOFA and Schedules they may deem just or proper.

Dated: June 12, 2009
Wilmington, Delaware

DRINKER BIDDLE & REATH LLP


By:    /s/ Howard A. Cohen
Howard A. Cohen (DE 4082)
1100 N. Market Street, Suite 1000
Wilmington, DE 19801
Telephone: (302) 467-4200
Facsimile: (302) 467-4201

- and -

Robert K. Malone
Frank F. Velocci
Michael J. Reynolds
500 Campus Drive
Florham Park, NJ 07932-1047
Telephone: (973) 360-1100
Facsimile: (973) 360-9831

Counsel for Debtor and Debtor in
Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

In re:                                          Chapter 11

MEADOWCRAFT, INC.,                              Case No. 09-10988 (BLS)


          Debtor.


**GENERAL NOTES REGARDING THE SCHEDULES AND STATEMENT**

Debtor's management has prepared the Schedules and Statements with the assistance of its professionals. While every effort has been made to file complete and accurate Schedules and a Statement of Financial Affairs based on the information available at the time of preparation, inadvertent errors and omissions my exist and subsequent receipt of information may result in material changes in financial and other data contained in the Schedules and Statement. The Debtor reserves all rights to amend the Schedules as necessary or appropriate. Unless otherwise indicated, all financial information contained herein is presented on an estimated and unaudited basis.

Any failure to designate a claim listed on the Debtor's Schedules as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such amount is not "disputed," "contingent," or "unliquidated." The Debtor reserves the right to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules as to amount, liability or classification, or to otherwise subsequently designate any claim as "disputed," "contingent," or "unliquidated."

In late February and early March of 2009 the Debtor determined that the former CFO and the former President were overstating the collateral reporting to the banks in order to obtain financing beyond the financing that would be available from a true collateral base under its revolving line of credit. Reported monthly earnings during 2008 were also misstated to avoid triggering bank covenants. The collateral reporting overstatement was approximately $20 million and included fictitious invoices, re-aging invoices/aged credits, fictitious quantities in finished goods, Chinese raw materials were not excluded from eligible inventory as in accordance with the loan agreements, a section of work in process inventory was classified as finished goods, and excess inventory was sold to a sales broker's company with full recourse and without physically leaving the Debtor's possession and so was a fictitious sale. Additionally, 2008 net income was overstated by approximately $12.4 million mostly by capitalizing production variances but also by booking profits on the full recourse sale. Many but not all of these misstatements were

done outside of the Debtor's general ledger and transaction records. To the extent possible, the Debtor has corrected financial statements. There can be no assurance that the restatement is total or complete and that incorrect transaction data that the debtor is unable to readily identify and/or properly restate has been excluded from the Schedules and Statement.

Warren, Avertt, Kimbrough & Marino, LLC has been the Debtor's auditor since August 3, 2003. Their last audit was for the year ended December 30, 2007. The auditor has not reviewed or audited the financial statements or books and records of the debtor since that last 2007 audit. Additionally, Warren, Avertt, Kimbrough & Marino, LLC has informed the debtor that they will not audit the 2008 financial statement or express any opinion on financial statements with a December 2008 period end as too much time has elapsed since December 31, 2008 to test the inventory and other balance sheet items as of year end.

The Debtor does not know the current market value of many of its assets and so has listed these values as unknown. In particular, as of the time of the submission of these Schedules and Statements, the Debtor has not recently appraised the market value of the real estate, vehicles, plant and equipment it owns.

Inventory is stated at standard cost. Note that the debtor develops standard costs once a year, at the beginning of the selling season in July and August, and does not change those standard costs through out the year. There has not been a physical inventory since December of 2007 of raw material, work in process or finished goods.

Receivables are stated at gross invoice value. Reference is made to Form 5 of the April 2009 Monthly Operating Report on file for an indication of the amount the Debtor deems uncollectible.

The Debtors have split liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and SOFA. Importantly, an involuntary petition was filed on March 20, 2009 and the Debtor did not consent to that petition until March 27, 2009 and the Court did not enter an Order for Relief until March 31, 209. Consequently, the Debtor continued to operate its business and maintain its books and records during this so-called gap period without segregating pre and post petition transactions. Due to a lack of funding and cash, however, few transactions took place during the Gap Period. Also, the Debtor has been on a prepayment basis with many of its vendors both before and after the Petition Date and the Debtor has accounted for these prepayments by way of a debit to accounts payable instead of a debit to a separate prepaid account on the General Ledger. Unfortunately, the Debtor has been unable to match up all prepayments with receiving documentation and with invoices. For these Schedules and Statements as well as the Debtor's current financial statements, vendors with a debit accounts payable balances are deemed not to be creditors and instead are listed on Schedule B, item 21 as being an unliquidated claim of the Debtor. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change and the status between creditor or holder of a claim of the Debtor may change.

While reasonable efforts have been made, determination of the date upon which each claim in Schedules E and F was incurred or arose would be unduly burdensome and cost prohibitive, and therefore, the Debtors do not list a date for each claim listed on Schedules E and F.

The listing of a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain certain renewal options, guarantees of payment, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as easements, right of way, subordination, no disturbance agreements, supplemental agreements, amendments/letter agreements, title agreements and confidentiality agreements. Such documents are also not set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of the structure of any transaction or any document or instrument related to a creditor's claim.

The Debtors may be party to certain agreements that have expired by their terms, but all parties continue to operate under the agreement. Out of an abundance of caution, the Debtors have listed such agreements on Schedule G. The Debtors' inclusion of such contracts or agreements on Schedule G is not an admission that such contract or agreement is an executory contract or unexpired lease.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is <u>not</u> an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code with respect to any such omitted contracts or agreements are not impaired by the omission.

These General Notes are in addition to the specific notes set forth in the individual Schedules and SOFA. Disclosure of information in one Schedule, SOFA, exhibit, or continuation sheet even if incorrectly placed, shall be deemed to be disclosed in the correct Schedule, SOFA, exhibit or continuation sheet.

AMENDED

In re **MEADOWCRAFT, INC.**                                      Case No.   09-10988
_____                                _____
                    Debtor                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY

### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 21. OTHER CONTINGENT AND UNLIQUIDATED CLAIMS OF EVERY NATURE, INCLUDING TAX REFUNDS, COUNTERCLAIMS OF THE DEBTOR, AND RIGHTS TO SETOFF CLAIMS.  GIVE ESTIMATED VALUE OF EACH. | | AP TRADE CREDIT BALANCE (VARIOUS VENDORS) | | $81,949.68 |
| | | (AMENDED) CLAIMS FOR FRAUD, MISMANAGEMENT AND ANY OTHER WRONGFUL ACTIONS LARRY MAYNOR 2017 BROOK HIGHLAND RIDGE BIRMINGHAM, AL 35124 | | UNKNOWN |
| | | (AMENDED) CLAIMS FOR FRAUD, MISMANAGEMENT AND ANY OTHER WRONGFUL ACTIONS JERRY CAMP 120 SOUTHLEDGE BIRMINGHAM, AL 35242 | | UNKNOWN |
| 22. PATENTS, COPYRIGHTS, AND OTHER INTELLECTUAL PROPERTY.  GIVE PARTICULARS. | | PROPERTY LOCATION: 151 NARROWS PARKWAY BIRMINGHAM, AL 35242 | | |
| | | ARLINGTON HOUSE - 2172999 | | UNKNOWN |
| | | ARLINGTON HOUSE LOGO - 2555384 | | UNKNOWN |
| | | CLASSIC FURNITURE FOR THE GREAT OUTDOORS - 2572806 | | UNKNOWN |
| | | DOGWOOD FLOWER -2675985 | | UNKNOWN |
| | | HOME COLLECTION VINE - 2522070 | | UNKNOWN |
| | | MEADOWCRAFT -2172998 | | UNKNOWN |
| | | MEADOWCRAFT LOGO - 2498054 | | UNKNOWN |
| | | PLANTATION PATTERNS - 2242465 | | UNKNOWN |
| | | PLANTATION PATTERNS AMERICAN WROUGHT IRON FUNITURE -23152648 | | UNKNOWN |
| | | PLANTATION PATTERNS HOUSE - 2648076 | | UNKNOWN |
| | | PP STYLIZED - 226390 | | UNKNOWN |
| | | SALTERINI -2193504 | | UNKNOWN |
| | | THE HOME COLLECTION BY MEADOWCRAFT - 2332000 | | UNKNOWN |

AMENDED

In re  **MEADOWCRAFT, INC.**

Debtor

Case No.  **09-10988**

(if known)

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF A CORPORATION

I, Tyler Mayoras, the Chief Restructuring Officer of MeadowCraft, Inc., declare under penalty of perjury that I have read the foregoing summary and schedules and that they are true and correct to the best of my knowledge, information, and belief.

Date  June 12, 2009

Signature  /s/  Tyler Mayoras

Tyler Mayoras

[Print or type name of individual signing on behalf of debtor.]

Chief Restructuring Officer

[Indicate position or relationship to debtor]

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. § 152 and 3571.